E-FILED
Wednesday, 22 July, 2020  10:49:32 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| TRAVIS CAMPBELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-01227-JBM |
| | ) | |
| MICHAEL P. MELVIN *et al.*, | ) | |
| Defendants. | ) | |

### SUMMARY JUDGMENT ORDER

**JOE BILLY MCDADE, United States District Judge:**

Plaintiff *pro se* Travis Campbell, who is imprisoned at Menard Correctional Center, filed an amended complaint under 42 U.S.C. § 1983. The constitutional violations alleged therein occurred during Plaintiff's incarceration at Pontiac Correctional Center ("Pontiac") and are asserted against the following Defendants: Christopher Brubaker, Adrian Corley, Joshua Davis, Anton Frazier, and Susan Prentice.

Before the Court is a motion for summary judgment [50] filed by Defendants, who claim that Plaintiff did not properly exhaust his administrative remedies before filing his lawsuit. The parties have filed their respective response and reply briefs [54, 56]. After reviewing the parties' submissions, the Court grants Defendants' motion for summary judgment.

### I. THE APPLICABLE STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence

1

to support the [material] fact." Fed. R. Civ. P. 56(c)(1). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

The nonmovant may not rest on his or her allegations in the complaint, but instead, must point to admissible evidence in the record to show that a genuine dispute exists. *Id*. "Conclusory allegations, unsupported by specific facts will not suffice." *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making that decision, the Court construes all facts and reasonable inference drawn therefrom in the light most favorable to the nonmovant. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

### B. The Process to Exhaust Administrative Remedies

Because Defendants base their motion for summary judgment on Plaintiff's alleged failure to exhaust his administrative remedies, that procedure is summarized as follows.

The Illinois Administrative Code ("Code") outlines the process for resolving grievances filed by inmates within the Illinois Department of Corrections ("IDOC"). *See* 20 Ill. Admin. Code § 504.800 et seq. (2017), as promulgated in 41 Ill. Reg. 3908-14 (Mar. 31, 2017), effective April 1, 2017. Section 504.840, which governs "Emergency Procedures," provides that "an offender may request a grievance be handled on an emergency basis" by forwarding it directly to the Chief Administrative Officer [("CAO")]." *Id*. § 504.840. "If the [CAO] determines that the grievance is not an emergency, the offender shall be notified in writing that he or she may submit the grievance by using the standard grievance process. *Id*. § 504.840(c).

2

An inmate begins the standard process by filing a written grievance addressed to the inmate's institutional counselor within sixty days "after the discovery of the incident, occurrence, or problem that gives rise to the grievance." *Id.* § 504.810(a). The counselor returns the grievance to the inmate with a response. (20-1: p. 2:7.) If the inmate believes his issue remains unresolved, he may submit the grievance to the designated grievance officer. (*Id.* p. 2:8.) "The grievance officer shall consider the grievance and report his or her findings and recommendation in writing to the Chief Administrative Officer," who is typically the warden of the facility. *Id.* § 504.830(e).

The warden then reviews the grievance officer's findings and recommendation and decides the grievance. *Id.* The inmate may appeal the warden's decision to the IDOC director. *Id.* § 504.850. The Administrative Review Board ("ARB"), which acts as the director's designee, reviews the inmate's appeal and submits its findings and recommendations to the director, who then makes a final determination. *Id.*

## II. BACKGROUND

Plaintiff admits that on May 5, 2017, he threatened harm to a corrections officer if she did not return his property to its original location following her search of his cell. As a result, Plaintiff was shackled, placed in a medical holding room, and issued a disciplinary ticket for intimidation, threats, and insolence. Plaintiff claimed that Defendant Prentice told him that she would have his "head split" because he threatened one of her officers. Prentice left, but a few minutes later, Defendants Brubaker, Corley, Davis, and Frazier arrived and "stomped" on Plaintiff's ribs, back, and knees; spit in Plaintiff's face; and use a racist term to describe Plaintiff. Plaintiff lost consciousness, but when he awoke, Defendants had Plaintiff's standing and were bending his wrists backward.

Seventeen days later, on May 22, 2017, Plaintiff filed his initial complaint in this Court

regarding the events mentioned. The Court dismissed Plaintiff's complaint, concluding that

Plaintiff's allegations failed to state a plausible claim for relief. In November 2017, Plaintiff filed

a motion for leave to file an amended complaint. After screening Plaintiff's amended complaint

as required by 28 U.S.C. § 1915A, the Court determined that Plaintiff had adequately alleged

that Defendants Brubaker, Corley, Davis, Frazier, and Prentice subjected Plaintiff to an

unconstitutional use of force in violation of his Eighth Amendment rights. (ECF 13: p. 2.)

### III. ANALYSIS

#### A.  The Exhaustion of Administrative Remedies Standard

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides the following

guidance regarding the applicability of administrative remedies:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life …." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*,

548 U.S. 81, 89 (2006). First, it provides an agency the "opportunity to correct its own mistakes

with respect to the programs it administers before it is haled into federal court and it discourages

disregard of the agency's procedures." *Id*. Second, "exhaustion promotes efficiency" as claims

can generally "be resolved much more quickly and economically in proceedings before an

agency than in litigation in federal court." *Id*.

The Seventh Circuit has taken a strict compliance approach to exhaustion, which requires

a prisoner to pursue all available administrative remedies and comply with the prison's

procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. If an inmate fails to follow the grievance procedure rules, her claims will not be exhausted but instead, forfeited, and she will be barred from filing suit in federal Court even if administrative remedies are for practical purposes not available due to her procedural default. *Id*. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Failure to exhaust is an affirmative defense for which the defendants carry the burden of proof. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### B. Defendants' Failure-to-Exhaust Affirmative Defense

Defendants contend that they are entitled to summary judgment on Plaintiff's excessive force claim because no evidence exists that Plaintiff exhausted his administrative remedies. In support of their contention, Defendants append the declaration of Sharon Simpson, who has been a grievance officer at Pontiac for over a decade. Therein, Simpson avers that her records do not show that Plaintiff filed a grievance concerning an incident on May 5, 2017. (50-1: p. 2:11.) Defendants also append the declaration of Patricia Sneed, the ARB Chairperson, who affirms that between May 2017 and March 2019, Plaintiff did not submit a grievance appeal to the ARB. (50-2: p. 1:5.) Defendants also note that Plaintiff filed his initial complaint in this Court on May 22, 2017, which was only seventeen days after the alleged use of excessive force.

Plaintiff's only claim relevant to the issue of exhaustion in his one-page response is his assertion that he filed a grievance on May 14, 2017, but he did not receive a response from the counselor, grievance officer, warden, or the ARB. Defendants reply that Plaintiff's statement is

conclusory and lacks evidentiary support. Defendants also note that even if Plaintiff did file a grievance on May 14, 2017, that filing shows that Plaintiff did not allow enough time for Pontiac to respond given the deadlines provided in the Code. *See* 20 Ill. Admin. Code § 504.830(e) (allowing a grievance officer two months after receipt of a plaintiff's grievance to investigate and deliver written findings to the CAO); *see also Id*. § 504.850 (allowing the ARB up to six months to respond after receipt of a grievance appeal).

The PLRA "makes exhaustion a 'precondition to suit' and requires dismissal if the prisoner failed to satisfy that condition." *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (quoting *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)); *see also Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) ("Permitting a prisoner to sue first and then ask the prison to address issues that are now the subject of pending litigation defeats the purpose of the PLRA's exhaustion requirement.").

The Court concludes that Defendants have satisfied their burden by providing admissible evidence that demonstrates the absence of a genuine dispute. Defendants also effectively negate Plaintiff's attempt to create a genuine dispute by claiming that he filed a grievance the week before he filed his complaint. Plaintiff's unsupported claim that he filed a grievance eight days before he filed his complaint is not only insufficient to create a genuine dispute on the issue of exhaustion but also shows that he could not have fully exhausted his administrative remedies given the timelines provided in the Code for official responses. Accordingly, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's complaint without prejudice. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust . . . .").

**IT IS THEREFORE ORDERED:**

1) **The Court GRANTS Defendants' motion for summary judgment on the issue of exhaustion [50] and DISMISSES Plaintiff's complaint without prejudice. The Court directs the Clerk of the Court to enter judgment in favor of Defendants and against Plaintiff.  The case is terminated. All deadlines and internal settings are vacated. All pending motions not addressed in this Order [56, 58, 59] are denied as moot. Plaintiff remains responsible for the $350 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present in his appeal to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, she will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered July 22, 2020.

s/ Joe Billy MsDade

_____
**JOE BILLY MCDADE**
**UNITED STATES DISTRICT JUDGE**